(1) The Licensor, Affiliates of Licensor reasonably designated by Licensor, the City, Philadelphia Industrial Development Corporation and Owner shall be named as additional insured parties.

(2) Required limits may be achieved through the Primary and the Umbrella policy listed under item 5.

   (ii) Notes:

- Commercial auto liability includes the owned, non-owned and hired auto hazards.

- Commercial general liability includes coverage for explosion, collapse, underground (XCU) hazards, the products and completed operations hazards, and includes broad form property damage. Contractual liability applies to the hold-harmless provisions of the contact between the named insured and Licensor for the project described above, as well as any liability assumed in Licensee's agreements the insured makes in connection with insured operations.

- Products Personal Injury liability coverage shall include coverage for all consumable items sold under this Agreement.

(b) The Licensee shall deliver to Licensor at least 30 days prior to commencing operations hereunder and then at least 30 days prior to, the expiration date of any then existing policies in the future during the Term hereof, a certificate or certificates evidencing that such insurance coverages are in effect for a period of not less than one year from the date of such certificate. All policies shall contain a clause providing in substance that such policies shall not be cancelled or any material provisions thereof amended adversely to the Licensor unless they shall have been first given at least thirty (30) days advance notice of such termination or of any such proposed amendment. If any policy expires or is cancelled, the Licensee shall immediately furnish a new certificate evidencing renewal or replacement. Licensee shall cause the Licensor, the Additional indemnities and any mortgagee holding an interest in the Stadium to be named as an additional insured on its liability insurance policies (i.e. Section 7.3(a)(i), 3 and 4) for liability arising out of Licensee's responsibilities under this Agreement, including, but not limited to, Section 7.2 above.

(c) All such policies may be provided under blanket and/or umbrella policies carried by the Licensee provided a loss at one location does not affect coverages at the Stadium.

(d) The insurance required by Section 7.3(a) shall be primary insurance and the insurer shall be liable for the full amount of any loss up to the total limit of liability required without the right of contribution of any other insurance coverage held by the Licensor or the Additional indemnities.

(e) This Section 7.3 is subject to all limitations identified in Sections 7.1 and 7.2, respecting Subrogation and Indemnification respectively. Nothing in this Section 7.3 shall be construed as requiring liability coverage and/or indemnification of the Licensor for its own negligence or willful action or omission.

(f) All insurance carriers providing the above coverage for the Licensee must be licensed to do so in the State of Pennsylvania. All such carriers must also be rated no lower than A-VII by the most recent Best's Key Rating Guide or Best's Agent's Guide or must be otherwise acceptable to the Licensor.

(g) It is expressly understood and agreed by the Licensee that the insurance requirements specified above contemplate the use of occurrence liability forms.

102444.00401/10894895v9  22

Dockets.Justia.com

(h) Licensee agrees that neither Licensor nor its agents, servants, employees or contractors shall be liable for, and Licensee, in consideration of Licensor's execution of this Agreement, hereby releases all claims for loss of life, personal injury or damage to property or business sustained by Licensee or any person claiming through Licensee resulting from any fire, accident, occurrence or condition in or upon the Stadium or any part thereof including, but not limited to, such claims for loss of life, personal injury or damage resulting from (1) any defect in or failure of plumbing, heating or air conditioning equipment, electrical wiring or installation thereof, water pipes, stairs, railings or walks; (2) any equipment or appurtenances being out of repair; (3) the bursting, leaking or running of any tank, washstand, water closet, waste pipe, drain or any other pipe or tank in, upon or about the Stadium; (4) the backing up of any sewer pipe; (5) the escape of steam or hot water; (6) water, snow or ice being upon or coming through the roof or any other place upon or near the Stadium of which the same is a part or otherwise; (7) the falling of any fixture, plaster, ceiling tile or stucco; (8) broken glass; (9) any act or omission of other tenants or other occupants of the Stadium. The foregoing waiver and release is intended by Licensor and Licensee to be absolute, unconditional and without exception.

## ARTICLE VIII

### Assignment

**8.1   Licensee's Assignment.**

(a) The Licensee shall not, without prior written consent of the Licensor, in its sole discretion, assign this Agreement or any of its rights or duties as Licensee, provided that such written consent shall not be required where such assignment is a collateral assignment to any bank or financial institution providing financing to the Licensee provided the terms and conditions of any such collateral assignment are reasonably acceptable to Licensor.

(b) Notice and copy of any assignment must be given to Licensor at least 10 days prior to the effective date of such assignment and such assignment must contain the specific assumption of concession obligations and liability hereunder; however, no such assignment or assumption shall relieve Licensee's obligation or liability hereunder without the written consent of Licensor. Any change in control in ownership of Licensee shall be deemed an assignment hereunder and shall require Licensor's consent as aforesaid. For purposes of this Agreement a "change in control" shall be deemed to be the direct or indirect transfer of more than 50% of the voting equity of Licensee, including without limitation, the outstanding voting stock of Licensee, or other change in the effective control of the management, operation and general decision making authority of Licensee and its business.

**8.2   Licensor Assignment.**

(a) Providing Licensee is not in default, (beyond the expiration of any applicable grace periods) the Licensor covenants to cause this Agreement to be assigned to any transferee of Licensor's rights to operate the Stadium under the Stadium Lease provided that such transfer shall not relieve Licensor of its obligations hereunder except to the extent and such assignee assumed in writing Licensor's obligations under the Agreement. Upon acceptance of such assignment, such transferee shall be bound by all of the provisions of this Agreement which are applicable to Licensor and shall be entitled to all of its rights and benefits accruing hereunder.

(b) Licensor may sell, assign, pledge or otherwise transfer or encumber (each, a "transfer") this Agreement and any or all of its rights and obligations hereunder to any other entity, including, but not limited to, any source of or guarantor or insurer of financing or any trustee, collateral agent or other entity appointed in connection with such financing (each, an "Assignee"), whether by

102444.00401/10894895v9        23

security agreement, collateral assignment, transfer or otherwise; provided, that such transfer shall not relieve Licensor of its obligations under this Agreement except to the extent any such Assignee assumes in writing Licensor's obligations under this Agreement. Upon reasonable prior notice from the Licensor, Licensee shall make any payments due hereunder to such Assignee and shall execute and deliver any documents that Licensor or any Assignee may reasonably request to acknowledge and confirm that upon any such transfer, this Agreement will remain in full force and effect, will continue to be a legal, valid and binding obligation of Licensee enforceable in accordance with its terms (subject to applicable bankruptcy or insolvency laws and general principles of equity), and that neither Licensee, nor to Licensee's knowledge, Licensor is in material breach or violation of this Agreement.

(c) Licensor, at its sole discretion, may engage the services of a stadium manager or other designee, which manager or designee shall be entitled to exercise the rights and duties of Licensor hereunder in accordance with Licensor's agreement with the stadium manager or designee.

## ARTICLE IX

### Enforcement of Rights

**9.1  Licensor's Enforcement Rights.**

Subject to the terms of Section 9.3 below, Licensor may terminate this Agreement by written notice to such effect for cause in the event: (a) Licensee fails to remit, for a period of ten (10) days after receipt of written notice of demand therefor, any sums due and owing to Licensor under Article V of this Agreement (except for such amounts which the Licensee, in good faith, disputes as owing or is permitted to withhold hereunder); or (b) the Licensee fails in a material and substantial manner (in Licensor's commercially reasonable judgment )to perform its other obligations hereunder (including without limitation, operating the Concession Facilities in a first class, professional manner consistent with similar public Stadium vendors) where the effect thereof is to deprive Licensor, in a substantial and material manner (in Licensor's commercially reasonable judgment), of the benefits of this Agreement (except where such failure or refusal is due to a Force Majeure) and such failure continues substantially unremedied for a period of thirty (30) days (15 days if the Default occurs during the NFL Season) after receipt of written notice of the particular failure to perform or, in the case of a failure due to Force Majeure, such failure continues unremedied for a period of thirty (30) days after the condition constituting a Force Majeure has terminated; or (c) in the event Licensee is placed into bankruptcy either voluntarily or involuntarily, or if Licensee becomes financially insolvent and unable to perform its duties under this Agreement. Licensee shall be responsible for lost revenue and consequential damages, i.e. loss of future events due to lack of concession services at any one event that causes promoters to book events into other facilities, in the event of termination due to Licensee's default.

In the event Licensee shall fail to correct any potentially hazardous condition, Licensor shall give written notice of such default. In the event such default is not remedied to the satisfaction and approval of Licensor within forty-eight (48) hours of receipt of such notice by Licensee, the Licensee may be declared in default and all of its rights under this Agreement shall terminate.

**9.2  Licensee's Enforcement Rights.**

(a) The parties agree that in the event Licensor fails to perform, in any material and substantial respect, its obligations contained in Section 3.1(a) and/or 3.2(a) of this Agreement and the effect thereof is to deprive Licensee, in a substantial and material manner, of the benefits of this Agreement, then Licensee shall have all rights and remedies available at law or in equity for such failure of performance including, without limitation, the right to exclusive possession and use of the Concession

102444.00401/10894895v9      24

Facilities and Concession Equipment in accordance with the terms of this Agreement and to specific enforcement of this Agreement.

(b) Subject to the terms of Section 9.3 below, in the event the Licensor fails to perform, in any material and substantial respect, its obligations hereunder where the effect thereof is to deprive the Licensee, in a substantial and material manner, of the benefits of this Agreement (except where such failure or refusal is due to a Force Majeure), and such failure continues unremedied for thirty (30) days after receipt of written notice of the particular failure to perform or, in the case of a failure due to Force Majeure, such failure continues unremedied for a period of 30 days after the condition constituting a Force Majeure has terminated, Licensee may also terminate this Agreement by furnishing Licensor with written notice of its intent to do so.

9.3     Settlement.

(a) Upon termination or expiration of this Agreement for any reason, Licensee shall immediately surrender possession of the Concession Facilities (including the Leasehold Improvements) and all Concession Equipment and Smallwares (and related manuals and software) to Licensor, and all matters, rights and liabilities existing on the date of termination between the parties hereto shall be determined by the parties hereto as of such termination date (except as described above), and discharged as promptly as possible thereafter, including but not limited to any known claims for damages either party may have against the other for breach of the terms and conditions hereof. Any such surrender shall require delivery of possession in good condition, reasonable and ordinary wear and tear excepted and otherwise in compliance with the terms of this Agreement.

(b) [Intentionally omitted]

(c) Upon termination or expiration of this Agreement for any reason, Licensor shall have the option to purchase Licensee's stock at cost.

(d) In addition, upon termination or expiration of the Term (as same may be extended pursuant to Section 3.3(a) hereof) for any reason (other than termination by Licensor for cause), Licensor shall pay Licensee the sum of $250,000, subject to offset by a sum equal to the amount Licensor has expended to cure defaults by Licensee. Said $250,000 shall not be payable to Licensee in the event Licensee continues to provide Concession Services in the Stadium, whether under this Agreement or a subsequent agreement, beyond the 5-year term of this Agreement.

(e) Notwithstanding any termination of this Agreement, all then accrued liabilities and obligations of the parties will survive until same are fully satisfied.

ARTICLE X

Casualty Event

10.1    Restoration.

After any damage to or destruction of the Stadium or any portion of the Stadium, Licensee shall continue the operation of its Concession Facilities and Concession Equipment hereunder to the extent practicable from the standpoint of good business. The rental percentage will be equitably reduced to reflect the loss of sales outlets. To the extent of insurance proceeds available, parties acknowledge that the terms and conditions of the Stadium Lease govern with respect to the obligation to make any repairs,

reconstruction or restoration of any such damage or destruction. In the event of any such repair, reconstruction or restoration, Licensee shall not be entitled to any monetary or other damages because of any resulting inconvenience or loss. However, the Term hereof shall be equitably extended.

If restoration is not possible or not completed within one year, either party may terminate this Agreement by issuing the other written notice of its election to do so.

## ARTICLE XI
## VENUE/CHOICE OF LAW

### 11.1   Venue/Choice of Law

Both parties hereby agree to the exclusive jurisdiction of the Philadelphia County Common Pleas Court of Pennsylvania or the Federal Courts for the Eastern District of Pennsylvania, or such other venue as Licensor chooses provided however; nothing contained herein will prevent either party from bringing an action or exercising any rights against any assets of the other in any other state or nation to enforce any award of judgment obtained in the venue provided above. Licensee hereby waives any objection to venue and any objection based on a more convenient forum in any action instituted herein.

## ARTICLE XII

## Condemnation

### 12.1   Entire Taking.

In the event of a taking, for any public or quasi-public use, under any statute or by right of eminent domain (a "Taking") of (a) all of the Stadium or (b) so much of the Stadium so that it no longer can be used for, or restored for Events then Licensor's and Licensee's obligations to perform under the terms and conditions of this Agreement shall cease.

### 12.2   Partial Taking.

In the event of any other taking of the Stadium for public or Quasi-public use under any statute or by right of eminent domain which does not result in the conditions described in Section 12.1, the Licensor shall, to the extent applicable agreements permit it to do so and to the extent of any award, restore the Stadium to a condition suitable for holding Events, and this Agreement shall continue in full force and effect and the Rental rates be equitably reduced based on the number of sales outlets that will no longer be available to Licensee.

### 12.3   Compensation.

Licensee shall not have the right to prosecute an action against the condemning authority for compensation for the loss of its leasehold estate and personal property.

## ARTICLE XIII

## Miscellaneous

### 13.1 Applicable Law.

This Agreement shall be governed in all respects by the Laws of the Commonwealth of Pennsylvania, without regard to such commonwealth's position with respect to Conflict of Laws.

### 13.2 No Brokers

Licensee and Licensor represent and warrant to each other that they have not dealt with any brokers or similar parties in connection with this Agreement and each party hereby indemnifies, defends and holds the other harmless from all costs, expenses or liabilities resulting from a breach by such party of its foregoing representation.

### 13.3 Binding On.

This Agreement shall be binding upon, and inure to the benefit of the parties hereto and their respective successors and assigns, as may be permitted herein.

### 13.4 Whole Agreement

This Agreement and the exhibits attached hereto, contain all of the covenants, promises and agreements between the parties concerning the operations described herein. It supersedes all prior agreements, arrangements or understanding, whether written or oral. This Agreement may not be amended or modified except in writing signed by the parties. All prior agreements between the parties are hereby superseded and terminated in all respects.

### 13.5 No Joint Venture.

Licensee is an independent contractor. Nothing hereinabove or elsewhere contained in this Agreement shall in any manner be deemed to create a partnership, or joint venture relationship between the Licensor and Licensee, or any of their respective Affiliates.

### 13.6 Notices.

All notices required or permitted to be given under the terms of this Agreement shall be sent in writing by certified mail, return receipt requested, or by nationally recognized next day overnight courier service to the parties hereto at their addresses first set forth above or to such other address as the parties may hereinafter designate in writing. Notices shall be deemed given when deposited in the mail or actually delivered by courier.

### 13.7 Invalid Sections.

Any provision of this Agreement prohibited or invalidated by a court of competent jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or invalidity without affecting the validity of the remaining provisions of this Agreement.

### 13.8 [Intentionally Omitted]

### 13.9 No third party beneficiary.
It is intended that this Agreement shall not confer any third party beneficiary rights on any other party.

13.10   **Limitation of Liability.**

Neither Licensor's officers, directors, partners or shareholders shall be personally liable in manner or to any extent under, or in connection with this Agreement, and Licensee and its successors and assigns and, without limitation, all other persons, partnerships, corporations and entities shall look solely to the assets of Licensor for the satisfaction of any claims or judgments against Licensor.

13.11   **Subordination.**

This agreement shall be subject and subordinate at all times to the terms and conditions of the Stadium Lease, any ground lease affecting the Stadium and to the lien of any mortgage or deed of trust, heretofore or hereafter placed by Owner and/or Licensor upon any or all of the Stadium and of all renewals, modifications, consolidations, replacements and extensions thereof (all of which are hereinafter referred to collectively as a "mortgage"), all automatically and without the necessity of any further act on the part of Licensee to effectuate such subordination. Licensee shall, at the request of the holder of any such mortgage or ground lease interest, upon foreclosure thereof or termination of such ground lease, attorn to such holder. Licensee shall also execute, enseal, acknowledge and deliver, within 15 days after Licensee's receipt of demand, such further instrument or instruments evidencing such subordination of Licensee's right, title and interest under this Agreement.

13.12   **City Event Uses/Commonwealth Event Uses** – Licensee agrees to abide and be bound by the terms and conditions of Sections 7.16.1 and 7.16.2 of the Stadium Lease. True and correct copies of such sections are attached hereto as Exhibit "F".

13.13   **Other Governmental Requirements.**

In addition to its obligations hereunder, during the term of this Agreement, Licensee agrees, at its sole cost and expense, to comply with the requirements set forth on Exhibit "G" attached hereto and made a part hereof.

13.14   Licensee agrees to purchase $20,000 worth of in Club seats annually throughout the Term of this Agreement.

13.15   **Licensee Guaranty** – Attached hereto as Exhibit "H" is a Guaranty of Licensee's Obligations to be signed and delivered to Licensor contemporaneously with the signing of this Agreement.

13.16   **Pre-Event Buffet** - Notwithstanding anything contained in this Agreement to the contrary, it is understood and agreed that a portion of the Concession Facilities on the club level as shown on Exhibit "B-1" is intended to be shared by Licensee and the Premium Caterer with respect to a "pre event" brunch to be serviced by the Premium Caterer. Specifically, it is agreed that the portion of the Concession Facilities identified on Exhibit "B-1" as the "Pre Game Brunch/Buffet Area" will be used by the Premium Caterer for purposes of providing pre-event brunch services. The Pre-Event Brunch/Buffet Area will be made available to Licensee by the Premium Caterer by half time of each football Event (or equivalent time for a non-football Event) with all Premium Caterer facilities "broken down" and stored in a manner not to materially disrupt Licensee's operations. Additionally, Licensee acknowledges that during non-Event functions Premium Caterer may use the bar facilities forming a part of the Concession Facilities on the Club Level of the Stadium. The use of the Pre-Event Brunch/Buffet area and the use of any club level bar facilities by the Premium Caterer shall be at the Premium Caterer's sole cost,

expense and risk. Licensor shall set forth such understanding in its concession agreement with the Premium Caterer and shall require the Premium Caterer to use such Concession Facilities in a first class professional manner.

13.17. **Exceptions To Use of Plaza.** Licensee acknowledges that Licensor may use portions of the Plaza for "corporate" type hospitality areas, including the erecting of temporary tent type structures. It is currently intended that the concession requirements for these areas will be serviced by the Premium Caterer and not Licensee. During the time that any such hospitality areas are in use in the Plaza, those portions of the Plaza shall be deemed to be Excluded Areas for purposes of this Agreement. Licensor agrees to provide Licensee with reasonable prior notice as to the number and approximate location of any such hospitality areas and agrees to use it's commercially reasonable efforts to avoid material disruption with Licensee's operations being conducted in the Plaza.

**IN WITNESS WHEREOF**, this Agreement has been duly executed as of the day and year first above written.

ATTEST:

_____

PENN SPORTSERVICE, INC.

By: _____
   Nicholas Biello, President

**Eagles Stadium Operator, LLC**

By: _____
       Joseph Banner

Its: _____
        President

102444.00401/10894895v9                    29

## EXHIBITS

| | | |
|---|---|---|
| A | - | Stadium Site Map |
| B | - | List of Architectural Drawings |
| B-1 | | Overviews/Selected Drawings |
| B-2 | | Leasehold Improvement Drawings |
| B-3 | | Utility Systems Drawings |
| C | - | Additional Equipment/Smallware budget |
| D | - | Liquor Policy |
| E | - | MBE/WBE Agreements |
| F | - | City/Commonwealth Uses |
| G | - | Other Governmental Requirements |
| H | - | Form of Guaranty |

102444.00401/10894895v9